**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5399-15T4

CASTLE REALTY MANAGEMENT,
LLC, ASSIGNEE OF CC DAHMS,
LLC t/a RE/MAX CONNECTION
REALTORS,

    Plaintiff-Respondent,

v.

KEVIN BURBAGE, AUGUSTA
INVESTMENTS, INC. d/b/a
RE/MAX PREFERRED,

    Defendants-Appellants.

_____

Argued May 4, 2017 — Decided  July 13, 2017

Before Judges Lihotz and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Burlington County, Docket
No. C-118-15.

Barry W. Rosenberg argued the cause for
appellant.

Christopher C. Fallon, III, argued the cause
for respondent (Fox Rothschild LLP, attorneys;
Mr. Fallon, Adam Busler and Nathan M. Buchter,
on the brief).

PER CURIAM

Plaintiff, Castle Realty Management, t/a Re/Max Connection Realtors and defendant, Augusta Investments, t/a Re/Max Preferred are competing franchisees of Re/Max of New Jersey (Re/Max). Kevin Burbage is a licensed real estate broker who worked for plaintiff then left to work for defendant.

Plaintiff filed this ten-count verified complaint and order to show cause against Burbage and defendant in the Chancery Division, seeking equitable and monetary relief, alleging, among other things, Burbage violated the non-compete clause of his employment agreement, and defendant improperly solicited Burbage and its other employees, by engaging in unfair competition. Defendant moved to dismiss the complaint, arguing plaintiff's franchise agreement required disputes be submitted to arbitration.

In a June 14, 2016 order, supported by a written opinion, Judge Paula T. Dow denied the motion to dismiss. Judge Dow also denied defendant's motion for reconsideration. Plaintiff withdrew its requests for equitable remedies and the matter was transferred to the Law Division.

The denial of defendant's motion to dismiss and compel arbitration, although not a final judgment, is appealable of right. See R. 2:2-3(a)(3) (An order "denying arbitration shall also be deemed a final judgment of the court for appeal purposes."); see also Jaworski v. Ernst & Young US LLP, 441 N.J. Super. 464, 472

(App. Div.), <u>certif. denied</u>, 223 <u>N.J.</u> 406 (2015). On appeal, defendant seeks reversal, maintaining plaintiff's action must be dismissed based on the arbitration clause in its franchise agreement with Re/Max. Defendant asserts the franchise structure mandates dispute resolution procedures among franchisees, as well as between franchisee and franchisor, and the contract clause barring a third-party beneficiary's reliance was not applicable to this matter. We are unpersuaded and affirm.

As franchisees, plaintiff and defendant separately executed identical franchise agreements with Re/Max. The respective agreements contain identical provisions regarding the resolution of disputes arising from the relationship with Re/Max. Section 15 contains the following provisions:

> A. <u>DISPUTE RESOLUTION.</u>
>
> The RE/MAX Dispute Resolution System ("the RDRS") is a set of rules and procedures for the resolution of disputes, complaints, claims or other problems ("Disputes") that arise between you and other affiliates of the RE/MAX Network of offices and real estate agents.
>
> B. <u>DISPUTES INVOLVING RE/MAX FRANCHISES, SALES ASSOCIATES OR THEIR RE/MAX AFFILIATES.</u>
>
> In the event of a Dispute involving you, any other RE/MAX franchisee, any RE/MAX Sales Associate (whether affiliated with your Office or any other RE/MAX office) or other RE/MAX Affiliate, you agree to submit the Dispute to mediation and, if unsuccessful, to binding

arbitration using the RDRS, if it is then available.

C.    ALTERNATIVES.

If the RDRS is not offered or otherwise available or the dispute is between RE/MAX Regional and Franchise Owner, the Dispute shall be submitted to an alternative mediation and arbitration system mutually acceptable to the parties of the Dispute.  If the parties cannot agree on an alternative mediation and arbitration system, then the Dispute shall be submitted to the American Arbitration Association for mediation, and if unsuccessful, for binding arbitration in accordance with its Commercial Mediation Rules or Commercial Arbitration Rules, as appropriate.

Section 16 addresses the construction of the agreement and its enforcement.  Paragraph 16.N. specifically states:

N.    NO LIABILITY TO OTHERS; NO OTHER BENEFICIARIES.

We will not, because of this Agreement or by virtue of any approvals, advice or services provided to you, be liable to any person or legal entity who is not a party to this Agreement.  You understand that you are not a third party beneficiary of any other franchise agreement between us and other RE/MAX franchisees and that you have no independent right to enforce the terms of, or require performance under, any other franchise agreement.

When Burbage left his employment with plaintiff and joined defendant's office, plaintiff initiated this action.  Plaintiff alleged Burbage breached his employment contract.  Other counts

4

in the complaint alleged Burbage and defendant engaged in slander, trade libel, unfair competition, and conspiracy, as well as misappropriating trade secrets and confidential information.

Initial disagreements arose regarding discovery and venue. Defendant moved to dismiss the complaint and transfer the matter to the RE/Max Dispute Resolution System, pursuant to paragraph 15 of each parties' franchise agreement. Following oral argument, Judge Dow entered an order which temporarily enjoined Burbage from contacting plaintiff's employees and using its trade secrets. On the return date of the order to show case, the pending motions were adjourned and the parties were directed to proceed to mediation, which proved unsuccessful.

Plaintiff withdrew its request for injunctive relief and moved to transfer the matter to the Law Division. Oral argument on the outstanding motions was conducted on June 10, 2016. Construing the respective franchise agreements, Judge Dow concluded defendant had no right to force plaintiff to an arbitral forum. Plaintiff's motion to transfer the action to the Law Division was granted. Defendant's motion for reconsideration was denied. This appeal ensued.

We "review the denial of a request for arbitration de novo." Frumer v. Nat'l Home Ins. Co., 420 N.J. Super. 7, 13 (App. Div. 2011). Whether parties have contracted to arbitrate as well as

the applicability and scope of an arbitration agreement is a legal issue, subject to this court's plenary review. See Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) ("Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation. Our approach in construing an arbitration provision of a contract is governed by the same de novo standard of review.") (citations omitted), cert. denied, ___ U.S. ___, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015). "Arbitrability . . . whether the parties have agreed to submit to an arbitrator or a court the authority to decide whether a dispute is subject to arbitration" is an issue "for a court to resolve" absent a specific agreement to the contrary. Morgan v. Sanford Brown Inst., 225 N.J. 289, 295-96 n.1, (2016).

> An agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." NAACP of Camden Cnty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div.), certif. granted, 209 N.J. 96 (2011), and appeal dismissed, 213 N.J. 47 (2013). A legally enforceable agreement requires "a meeting of the minds." Morton v. 4 Orchard Land Trust, 180 N.J. 118, 120 (2004). Parties are not required "to arbitrate when they have not agreed to do so." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488, 499 (1989); see Garfinkel[ v. Morristown Obstetrics & Gynecology Assocs., P.A.], 168 N.J. [124,] 132

[(2001)] ("'[O]nly those issues may be arbitrated which the parties have agreed shall be.'" (quoting In re Arbitration Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 228 (1979))).

Mutual assent requires that the parties have an understanding of the terms to which they have agreed. "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Knorr v. Smeal, 178 N.J. 169, 177 (2003) (citing W. Jersey Title & Guar. Co. v. Indus. Trust Co., 27 N.J. 144, 153 (1958)). "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have . . . claims and defenses litigated in court." Foulke, supra, 421 N.J. Super. at 425.

[Atalese, supra, 219 N.J. at 442.]

Consequently, "a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Id. at 441. (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)). "Our state-law jurisprudence makes clear 'that when a contract contains a waiver of rights — whether in an arbitration or other clause — the waiver must be clearly and unmistakably established.'" Morgan, supra, 225 N.J. at 308-09 (quoting Atalese, supra, 219 N.J. at 444). "No magical language is required to accomplish a waiver of rights in an arbitration agreement." Id. at 309. Furthermore, "'courts operate under a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (quoting EPIX Holdings Corp. v. Marsh & McLennan Cos., 410 N.J. Super. 453, 471 (App. Div. 2009)); cf., Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc., 240 N.J. Super. 370, 374 (App. Div. 1990) (A "court may not rewrite a contract to broaden the scope of arbitration. . . .").

We turn to the agreement under review.

> In our review of an arbitration agreement, the agreement's terms "are to be given their plain and ordinary meaning." M.J. Paquet v. N.J. DOT, 171 N.J. 378, 396 (2002). We are tasked with discerning "the intent of the parties." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). If the meaning of a provision is ambiguous, the provision should be construed against the drafter because, "as the drafter, it chose the words that may be susceptible to different meanings." Id. at 224.
>
> [Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017).]

Specifically, "[i]t is . . . the intent expressed or apparent in the writing that controls." Garfinkel, supra, 168 N.J. at 135 (quoting Quigley v KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 266 (App. Div.), certif. denied, 165 N.J. 527 (2000)); see also Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993) (In evaluating the existence of an agreement to arbitrate, a court

"consider[s] the contractual terms, the surrounding circumstances, and the purpose of the contract.").

Here, plaintiff's franchise agreement with Re/Max and defendant's agreement with Re/Max each contain a dispute resolution clause requiring mediation and arbitration. Defendant's position is plaintiff's agreement mandates it arbitrate not only disputes with its franchisor Re/Max, but also disputes with any other Re/Max franchisee, including the issues raised in this matter. The question is whether defendant can rely on the clause in plaintiff's agreement with Re/Max to compel it arbitrate its claims with defendant and Burbage.

The specific language of paragraph 15.B. states:

> In the event of a Dispute involving you, any other RE/MAX franchisee, any RE/MAX Sales Associate (whether affiliated with your Office or any other RE/MAX office) or other RE/MAX Affiliate, you agree to submit the Dispute to mediation and, if unsuccessful, to binding arbitration using the RDRS, if it is then available.

Logically, this clause appears to support defendant's position that Re/Max intended to require all franchisees to resolve disagreements using arbitration. However, the clause does not stand alone. It is followed by paragraph 16.N., which suggests such a possibility is foreclosed by stating: "You understand that you are not a third party beneficiary of any other franchise

9

agreement between us and other Re/Max franchisees and that you have no independent right to enforce the terms of, or require performance under, any other franchise agreement."

Our Supreme Court mandates arbitration clauses must clearly show the parties to the agreement understand and agree to waive their right to proceed before our courts. Atalese, supra, 219 N.J. at 442-43 ("Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'") (quoting Foulke, supra, 421 N.J. Super. at 425). Here, an ambiguity exists in the scope of matters covered by paragraphs 15 and 16. In such an instance, the agreement should be "strictly construed," which would reject the position taken by defendant that plaintiff unequivocally agreed to submit to arbitration its claims against defendant and Burbage. See Roach, supra, 228 N.J. at 179.

Consequently, we must reject defendant's argument suggesting the third-party beneficiary clause applies to non-Re/Max franchisees making it inapplicable to this dispute. The appeal does not present, and we do not comment on Re/Max's rights to compel plaintiff's or plaintiff's obligations to its franchisor; notably Re/Max is not a party to this litigation. "The standard

10                                                          A-5399-15T4

applied by courts in determining third-party beneficiary status is 'whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts.'" Reider Cmtys. v. N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 77 (E. & A. 1940)), certif. denied, 113 N.J. 638 (1988). "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." Ibid.

Accordingly, our interpretation of paragraph 16.N. excludes enforcement of the agreement by non-parties to that contract, and only "a person for whose benefit a contract is made may sue on the contract in any court." Id. at 221.

We affirm the June 14, 2016 order as well as the July 26, 2016 order denying reconsideration. We remand the matter to the Law Division for further disposition.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5399-15T4